# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| El Petron Enterprises, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Whiting Resources Corporation, ) <br> ) <br> Defendant. ) | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 1:16-cv-090 |

Before the Court are the parties' cross-motions for partial summary judgment. Plaintiff El Petron Enterprises, LLC ("El Petron") filed a complaint against Defendant Whiting Resources Corporation ("Whiting") on April 25, 2016. See Docket No. 1. Whiting filed an answer on June 1, 2016. See Docket No. 14. El Petron moved for partial summary judgment on May 3, 2017. See Docket No. 36. Whiting filed a response and cross-motion for partial summary judgment on June 6, 2017. See Docket Nos. 45 and 49. El Petron filed a combined response and reply brief on July 7, 2017. See Docket Nos. 52 and 53. Whiting filed a reply to El Petron's response on July 28, 2017. See Docket No. 56. For the reasons set forth below, the Court denies El Petron's motion for partial summary judgment and grants Whiting's cross-motion for partial summary judgment.

## I. BACKGROUND

El Petron is a Texas Limited Liability Company; George Wallace Tilley, Jr. is El Petron's sole member. See Docket No. 41, pg. 1. Whiting is a Colorado corporation with its principal office in Denver, Colorado. See Docket No. 1. El Petron brought this diversity suit against Whiting on April 25, 2016, asserting Whiting has improperly deducted costs and fees from El

Petron's overriding royalty interests. The parties' disagreement focuses on language in an overriding royalty reservation. The parties dispute whether Whiting may deduct post-production costs from overriding royalty payments Whiting makes to El Petron, and if so, whether the deductions Whiting has made have been reasonable.

In 2005 and 2006, El Petron entered into a number of oil and gas leases ("the Leases") with various mineral owners in McKenzie County, North Dakota. Both parties agree the terms of each of the Leases are substantially similar. See Docket Nos. 41, p. 1 and 46, pgs. 3-4. El Petron has filed one of the Leases as an Exhibit. It reads:

> 3. In consideration of the premises the said Lessee covenants and agrees:
>
>     1st. To deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal 1/6th part of all oil produced and saved from the leased premises.
>     2nd. To pay Lessor 1/6th of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being off the premises, and if used in the manufacture of gasoline a royalty of 1/6th, payable monthly at the prevailing market rate for gas.
>     3rd. To pay Lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of 1/6th of the proceeds, at the mouth of the well, payable monthly at the prevailing market rate.

See Docket No. 41-1. On October 27, 2006, El Petron assigned its interests in the Leases ("the Assignment") to Sonic Oil & Gas, L.P. ("Sonic"). See Docket No. 41. The Assignment contains an overriding royalty reservation ("the Reservation") that states:

> Assignor RESERVES AND EXCEPTS from this Assignment of Oil and Gas leases an overriding royalty interest equal to the difference between existing landowner royalty and overriding royalty burdens as of October 27, 2006 and a total burden of 20% on all oil, gas and casinghead gas, condensate, natural gas liquids, and all other minerals and substances produced from the lands covered by Said Leases. The overriding royalty reserved herein shall be paid or delivered to Assignor free and clear of all costs, except taxes, and shall be calculated in the same manner as is the royalty reserved under the terms of Said Leases.

2

See Docket No. 41-2, p. 1. The Assignment was later revised to correct certain legal descriptions and fix other errors, but the reservation language remained unchanged. See Docket No. 1, pgs. 2 and 3. Oil and casinghead gas[1] was, and continues to be, produced under the leases. See Docket No. 46-1, p. 1. In 2010, Kodiak Oil & Gas (USA) Inc. ("Kodiak") obtained Sonic's interests in the Leases. See Docket No. 42, p. 3. In 2014, Whiting purchased Kodiak and acquired Kodiak's interests in the Leases. See Docket No. 40, p. 3. Whiting currently operates a number of oil and gas wells that produce from minerals included in the Leases. See Docket No. 46-1, p. 1.

Whiting sells oil and gas produced from the wells to third-party companies. These companies charge fees and allocate costs for processing, transportation, and marketing activities. See Docket No. 46-1, p. 1. Whiting pays royalties to El Petron based on the proceeds it receives from the third-party purchasers. See Docket No. 46-1, p. 2. In other words, Whiting's overriding royalty calculation includes deductions for third-party post-production fees and costs associated with processing and marketing. Whiting does not pay El Petron a royalty based on the full market value of the processed oil and gas. Nor does Whiting include any fees or costs associated with production expenses. See Docket No. 46-1, p. 2.

El Petron's complaint contains claims for: (1) declaratory judgment; (2) breach of covenants; (3) accounting; (4) nonpayment of royalties; and (5) unjust enrichment. See Docket No. 1. El Petron filed a motion for partial summary judgment on May 3, 2017. See Docket No. 36. Whiting filed a cross-motion for partial summary judgment on June 6, 2017. See Docket No. 45.

---

[1] Casinghead gas is gas produced from an oil well in conjunction with the extraction of crude oil. Koch Hydrocarbon Co. v. MDU Res. Group, Inc., 988 F.2d 1529, 1532 n.4 (8th Cir. 1993).

## II. **STANDARD OF REVIEW**

"Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 818 F.3d 356, 360 (8th Cir. 2016); see also Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). When there are factual disputes that may affect the outcome of the case under the applicable substantive law, summary judgment is not appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact is not the "mere existence" of a factual dispute. State Auto Ins. Co. v. Lawrence, 358 F.3d 982, 985 (8th Cir. 2004). Rather, an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The moving party always bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party may not rely merely on allegations or denials; it must set out specific facts showing a genuine issue for trial. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The court must view the facts in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

## III. **LEGAL DISCUSSION**

The parties' disagreement focuses on the reservation language in the Assignment that states the overriding royalty shall be "paid or delivered to [El Petron] free and clear of all costs, except taxes, and shall be calculated in the same manner as is the royalty reserved under the terms of [the] Leases." See Docket No. 41-2, p. 1. Both parties argue the language is unambiguous. El Petron asserts Whiting's deductions for third-party post-production costs violates the "free and clear of

4

all costs" language in the Assignment. Whiting argues the "free and clear of all costs" language simply describes the nature of an overriding royalty, which is free of production costs. Whiting contends the overriding royalty must be calculated in the same manner as the lessors' royalty under the Leases, which requires payment based on the price of oil in the pipeline and the price of casinghead gas at the mouth of the well.

A federal court sitting in diversity applies the substantive law of the forum state. Chew v. American Greetings Corp., 754 F.3d 632, 635 (8th Cir. 2014); see also Hammonds v. Hartford Fire Ins. Co., 501 F.3d 991, 996 n.6 (8th Cir. 2007). Under North Dakota law, assignments are interpreted in the same manner as contracts. Hallin v. Inland Oil & Gas Corp., 2017 ND 254, ¶ 8, 903 N.W.2d 61.

> The primary purpose in interpreting contracts, deeds, and leases is to ascertain and effectuate the parties' or grantor's intent. . . .
>
> The parties' intent is ascertained from the writing alone if possible. . . . When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law. When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent. . . . If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent become questions of fact.

Id. at ¶¶ 8-9 (internal quotation and citation omitted). "A contract is ambiguous if rational arguments can be made for different interpretations." Langer v. Bartholomay, 2008 ND 40, ¶ 12, 745 N.W.2d 649.

An overriding royalty interest is an interest in oil and gas production that is carved out of the working interest created in an oil and gas lease. Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc., 1 P.3d 909, 914 (Kan. 2000). The working interest in an oil and gas lease gives its owner the right to export minerals from the land; it is an interest that is burdened by the costs of production. Id. An overriding royalty interest is an interest in oil and gas that has been produced, and it is free of

5

the costs of production.  Id.; see also Armstrong v. Berco Res., LLC, No. 4:10-cv-22, 2012 WL 1493738 at *8 (D.N.D. Apr. 27, 2012).

The reservation language at issue contains two substantive clauses.  The first sets forth how the overriding royalty must be paid; the second describes how the overriding royalty must be calculated:

> The overriding royalty reserved herein shall be paid or delivered to Assignor free and clear of all costs, except taxes, and shall be calculated in the same manner as is the royalty reserved under the terms of Said Leases.

See Docket No. 41-2.  The Lease provides the following provision for calculation of royalties on the production of oil and gas ("the Production Royalty"):

> 1st.  To deliver to the credit of Lessor, free of cost, in the pipeline to which Lessee may connect wells on said land, the equal 1/6th part of all oil produced and saved from the leased premises.
> 2nd.  To pay Lessor 1/6th of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being off the premises, and if used in the manufacture of gasoline a royalty of 1/6th, payable monthly at the prevailing market rate for gas.
> 3rd.  To pay Lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of 1/6th of the proceeds, at the mouth of the well, payable monthly at the prevailing market rate.

See Docket No. 41-1, p. 1.

The North Dakota Supreme Court has adopted the "work-back method" for determining the market value of gas "at the well."  See Bice v. Petro-Hunt, L.L.C., 2009 ND 124, ¶ 21, 768 N.W.2d 496.  "Under the work-back method the lessee calculates the market value of the gas at the well by taking the sales price that it received for its oil or gas production at a downstream point of sale and then subtracting the reasonable post-production costs (including transportation, gathering, compression, processing, treating, and marketing costs) that the lessee incurred after extracting the oil or gas from the ground."  Id. at ¶ 14 (internal quotation omitted).  In other words,

the work-back method allows the lessee to deduct post-production costs prior to calculating the royalty. Id. at ¶ 15; see also Kittleson v. Grynberg Petroleum Co., 2016 ND 44, ¶ 11, 876 N.W.2d 443 ("The work-back method under the 'at the well' rule allows a lessee to deduct post-production costs from the plant tailgate proceeds before calculating [the] royalty."). The parties may modify the at-the-well rule; the language the parties use controls the methodology for the royalty calculation. See Kittleson, at ¶¶ 13-15 (holding language prohibiting deductions for processing costs qualifies "market value at the well" language in royalty clause).

El Petron argues the Reservation's "free and clear of all costs" language prohibits Whiting from deducting post-production costs from the overriding royalty. El Petron asserts the Reservation's reference to the Production Royalty calculation means "Whiting cannot calculate the lease royalty at the wellhead, and the overriding royalty in the pipeline or at the tanks, etc. Both royalties must be calculated based on the same price, volume, and location." See Docket No. 52, p. 4. Yet, El Petron maintains Whiting cannot deduct post-production costs from the overriding royalty because the "free and clear of all costs" language modifies the "at the well rule." See Docket No. 52, p. 4. El Petron would have Whiting determine the value of the overriding royalty pursuant to the Production Royalty calculation, but then revise the payment to remove post-production costs. See Docket No. 52, pgs. 5-6. However, if post-production costs are not included, then El Petron is not receiving payment pursuant to the Production Royalty calculation. El Petron ignores the fact that post-production costs are part of the calculation necessary for determining the value of the overriding royalty. El Petron's interpretation would result in an overriding royalty that is in fact different than the Production Royalty—in effect nullifying the Reservation's reference to the Production Royalty calculation. "A construction that attributes a reasonable

7

meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." Schwarz v. Gierke, 2010 ND 166, ¶ 16, 788 N.W.2d 302.

El Petron claims *Kittleson v. Grynberg Petroleum Co.* supports its interpretation. See Docket No. 52, pgs. 4-5. In *Kittleson*, the royalty clause in an oil and gas lease provided the lessee would pay "the market value at the well for all gas . . . provided however, that there shall be no deductions from the value of Lessor's royalty for any required processing costs of dehydration, compression, transportation, or other matter to market such gas." Kittleson, 2016 ND at ¶ 2. The defendant paid the plaintiff's royalty based on the market value at the well, which the defendant calculated by deducting post-production costs using the work-back method. Id. at ¶ 5. The plaintiff sued, arguing the "no deductions" language in the royalty clause prohibited the defendant from deducting post-production costs. Id. at ¶ 6. The defendant asserted its deductions for post-production costs were proper because such deductions are allowed under the work-back method, which North Dakota adopted in *Bice v. Petro-Hunt*. Id. at ¶ 11. The North Dakota Supreme Court explained the language the parties use governs royalty calculations. Id. at ¶ 13. It concluded the "no deductions" language in the royalty clause "qualifies and prevails" over the market value at the well language. Id. at ¶ 15.

El Petron argues the "free and clear of all costs" language used in its overriding royalty reservation is similar to the "no deductions" language used in *Kittleson*. El Petron asserts "[t]he 'free and clear of all costs' language qualifies and prevails over the market value at the well language [in the Leases]." See Docket No. 52, p. 5. However, the *Kittleson* royalty provision contained clear language demonstrating an intent to qualify the at-the-well rule: "Lessee shall pay Lessor the market value at the well . . . *provided however*, there shall be no deductions from the value of Lessor's royalty of any required processing of dehydration, compression, transportation,

8

or other matter to market such gas." Kittleson, 2016 ND at ¶ 2 (emphasis added). Unlike the royalty provision in *Kittleson,* the Reservation in this case contains no language indicating the "free and clear of all costs" language modifies or qualifies the Production Royalty calculation. The Reservation does not say the overriding royalty shall be calculated in the same manner as the Production Royalty, provided (or "except" or "however" or "notwithstanding") it shall be paid free and clear of all costs, except taxes. Rather, the Reservation contains two independent declarations separated by the word *and*—the proper interpretation must consequently give meaning to both clauses.

The first declaration concerns how the overriding royalty must be paid; the second declaration concerns how the overriding royalty must be calculated. The overriding royalty "shall be calculated in the same manner as is the royalty reserved under the terms of [the] Leases." It must be "paid or delivered to [El Petron] free and clear of all costs, except taxes." The payment clause reveals an intent for the sum paid to be based on the value of the Production Royalty without added costs, except taxes. Stated differently, Whiting may consider post-production costs to determine the value of the overriding royalty, as required by the Production Royalty calculation, but it may not deduct costs from that sum—for example, production costs or administrative fees. If it did so, the overriding royalty would not be "free and clear of all costs." To be clear, the deductions for post-production costs are part of the calculation required to determine the value of the overriding royalty; they are not costs added to it. If Whiting was required to add post-production costs back into the overriding royalty payment, it would be paying a royalty based on a higher price than it actually received when it sold the oil and gas. The Court finds the Reservation language unambiguous and concludes, as a matter of law, that Whiting may deduct post-production costs when required by the Production Royalty calculation.

## IV. CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment (Docket No. 36) is **DENIED**. The Defendant's Cross-Motion for Partial Summary Judgment (Docket No. 45) is **GRANTED**.

**IT IS SO ORDERED**

Dated this 14th day of March, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court